UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL S.,

          Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

Case No. C21-5559-SKV

ORDER REVERSING THE COMMISSIONER'S DECISION

Plaintiff requested judicial review of the ALJ's decision (1) finding that Plaintiff had been overpaid $12,158 in Social Security benefits between December 2009 and August 2013 and (2) denying Plaintiff's request for waiver of the overpayment. Although the Commissioner initially requested that the Court affirm the ALJ's decision, the Commissioner now requests a remand to allow the ALJ to reconsider the waiver portion of the decision. Dkt. 33 at 6-7.

After reviewing the administrative record (AR), all memoranda of record, and the oral argument of counsel, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

Plaintiff was born in 1985. In 2003, he began receiving Supplemental Security Income (SSI) on his own record. *See* AR 551. In 2009, Plaintiff's mother and guardian, Carolyn, filed

ORDER REVERSING THE COMMISSIONER'S
DECISION - 1

an application for disabled child benefits (DCB) on Plaintiff's behalf, upon the retirement of his father, Eugene, based on Eugene's record.[1] AR 35-35A. The Commissioner found Plaintiff entitled to those benefits as of December 2009 and assigned Carolyn as his representative payee. AR 38-40. Carolyn also applied for spouse's insurance benefits on Eugene's record, and although the Commissioner found her eligible for those benefits, she was not paid them in light of her excess earnings that year. AR 36-37.

On the advice of agency personnel, Plaintiff subsequently applied for disability insurance benefits (DIB) on his own record and was found eligible for DIB as of March 2008. AR 172, 437-38. Because the Commissioner found that Plaintiff was dually entitled to DIB and DCB, the Commissioner reduced Plaintiff's DCB award. AR 174, 278.

In September 2013, the Commissioner determined that Plaintiff had been overpaid from December 2009 through August 2013. AR 42-44. Plaintiff requested reconsideration and requested an explanation of how the overpayment had been calculated. AR 45. Plaintiff also argued that the Commissioner was at fault for the overpayment and disputed that he was obligated to repay it. AR 45-46.

The Commissioner affirmed the overpayment amount and repayment obligation upon reconsideration, explaining that the overpayment was caused by adjustments to Plaintiff's benefits required by the interplay between Plaintiff's and Carolyn's benefits on Eugene's record, as well as Plaintiff's benefits on his own record. AR 53-57.

Plaintiff requested a hearing, and also requested that the overpayment be waived. AR 65-69. The ALJ held a hearing in March 2015 (AR 412-51) and subsequently issued a decision finding that Plaintiff had been overpaid $11,517 in benefits, and although the overpayment was

---

[1] This order refers to Plaintiff's parents by their first names for ease of reference and to avoid disclosing Plaintiff's surname.

the fault of the Commissioner, recovering the overpayment would not defeat the purpose of Title II of the Social Security Act, and would not be against equity and good conscience.  AR 551-59.  The ALJ thus denied Plaintiff's request to waive the overpayment and found Plaintiff liable for it, and found Eugene and Carolyn contingently liable as well.  *Id.*

The Appeals Council granted Plaintiff's request for review to correct the amount of the overpayment ($12,157, instead of $11,517), and to relieve Carolyn of contingent liability.  AR 10-13.  The Appeals Council otherwise adopted the ALJ's findings.  *Id*.  Plaintiff sought judicial review, and the U.S. District Court for the Western District of Washington reversed the ALJ's decision and remanded for further administrative proceedings, with instructions to develop the record as to the basis of the overpayment calculation and, if necessary, reconsider Plaintiff's request for a waiver.  AR 572-86.

On remand, a different ALJ held a hearing in February 2020 (AR 466-99) and on three occasions after the hearing provided Plaintiff with additional agency documentation regarding the calculation of the overpayment.  AR 711-13, 720-25.  On all three occasions, Plaintiff sent rebuttals to the documentation provided.  AR 706-10, 714-15, 726-30.  The most recent of Plaintiff's rebuttals referenced a notice that Plaintiff and Carolyn received from the agency, stating that the remaining balance of Plaintiff's overpayment ($8,049) was waived because collecting it would prevent them from paying basic expenses or be unfair for some other reason.  AR 729-30.  The ALJ did not address the impact of this waiver in the decision.

In May 2021, the ALJ issued a decision finding that Plaintiff had been overpaid $12,157 in benefits, and that although the erroneous calculations that resulted in the overpayment were the Commissioner's fault, recovering the overpayment would not defeat the purpose of Title II of the Social Security Act, and would not be against equity and good conscience.  AR 455-62.

Thus, the ALJ found that Plaintiff's overpayment was not waived, that Plaintiff is liable for repaying it, and that Eugene has contingent liability for repaying it. *Id*.

Plaintiff now seeks judicial review of this decision. Dkt. 5.

## STANDARDS OF REVIEW

A reviewing court must affirm the Commissioner's findings of fact with respect to overpayment if the findings are supported by substantial evidence, and the proper legal standards were applied. *Albalos v. Sullivan*, 907 F.2d 871, 873 (9th Cir. 1990).

When a recipient receives more disability benefits than he is entitled, an overpayment has been made and the Commissioner may recover such. 20 C.F.R. § 404.501. Collection may be partially or completely waived if the claimant establishes that: (1) the claimant is "without fault" for the overpayment, and (2) recovery would either defeat the purpose of the Social Security Act or be against equity and good conscience. 20 C.F.R. § 404.506.

## DISCUSSION

Plaintiff argues the ALJ erred in calculating the amount of his overpayment and, even if the ALJ calculated the amount correctly, the ALJ erred in denying his request to waive the overpayment. The Commissioner contends that the ALJ correctly calculated the amount of the overpayment, but agrees that the ALJ's waiver determination should be reconsidered on remand.

### A. The ALJ Reasonably Applied the Regulations to Calculate the Overpayment

The Commissioner places a cap on the total amount of benefits that can be paid on one numberholder's record, no matter how many auxiliary beneficiaries are drawing benefits from that record. 20 C.F.R. § 404.403(a)(1). This cap is referred to as the family maximum, and the family maximum impacts the amount paid to auxiliary beneficiaries. 20 C.F.R. § 404.403(a)(2). The amount that the numberholder can receive is called the primary insurance amount (PIA), and

auxiliary beneficiaries may receive equal shares (up to 50%) of the PIA. *See* 20 C.F.R. §§ 404.333, 404.353. If the total of the PIA plus the auxiliary shares exceeds the family maximum, then the Commissioner reduces the auxiliary payments to meet the cap. 20 C.F.R. § 404.403(a)(1); Program Operations Manual System (POMS) GN 02603.020, *available at* https://secure.ssa.gov/poms.nsf/lnx/0202603020 (last visited at Sep. 29, 2022).

In this case, Eugene's PIA was $2,078.60, and the family maximum was $3,638.40. AR 459. The original benefit rate was 50% of the PIA, but the PIA plus the two original benefit rates exceeded the family maximum, so Plaintiff's and Carolyn's rates were reduced to $779.90 each. *Id*. For certain months, Carolyn was found to be not entitled to her share because of her own earnings, and the Commissioner adjusted Plaintiff's payment up to 50% of the PIA to account for Carolyn's reduction. *Id*. The Commissioner subsequently found that this adjustment was erroneous because the Commissioner failed to account for 20 C.F.R. § 404.403(a)(5), which states that Plaintiff (as a dual beneficiary, of both CDB and DIB) was not entitled to have his CDB payment increased based on the suspension of Carolyn's auxiliary benefits. *Id*.

Plaintiff contends that the Commissioner erred in counting Carolyn's technical (meaning non-payable) benefits toward the family maximum, which deprived Plaintiff of an upward adjustment of his own auxiliary payment. Dkt. 23 at 11-14. In response, the Commissioner argues that (1) Carolyn's benefits were not merely technical or theoretical, as in the cases cited by Plaintiff, and thus the ALJ did not err in finding that Carolyn's eligibility impacted Plaintiff's payment rate; and (2) because Plaintiff was dually entitled to CDB on Eugene's record and DIB on his own record, he was not eligible (by operation of the regulations) for an increase in his payments when Carolyn's benefits were suspended. Dkt. 27 at 3-4.

For the following reasons, the Court agrees with the Commissioner that the ALJ properly applied the regulations to find Plaintiff ineligible for an upward adjustment in his auxiliary benefits when Carolyn's eligibility for benefits was suspended.

### 1. Rules Governing the Family Maximum

The Commissioner's current regulations regarding the family maximum rule were issued in response to a First Circuit case, *Parisi v. Chater*, 69 F.3d 614 (1st Cir. 1995). In *Parisi*, a child of a numberholder was entitled to benefits as an auxiliary beneficiary. 69 F.3d at 616. The numberholder's spouse became eligible for benefits on her own record, and by operation of statute became automatically qualified for spousal benefits on the numberholder's record as well. *Id*. The benefits she was entitled to under her own record exceeded the benefits she would have been entitled to under the numberholder's record, and thus she was not paid any benefits as an auxiliary beneficiary. *Id*. The Commissioner nonetheless counted those auxiliary benefits toward the family maximum and reduced the child's benefits accordingly, and the First Circuit held that this calculation method was inconsistent with the regulatory text as well as the purpose of the family maximum rule. *Id*. at 622. The Commissioner subsequently amended the family maximum rule so that only payable benefits (not merely theoretical or technical benefits) are counted toward the family maximum. *See* Final Rule, *Reduction of Title II Benefits Under the Family Maximum Provisions in Cases of Dual Entitlement*, 65 Fed. Reg. 38424-01, 38425 (Jun. 21, 2000).

### 2. Was Plaintiff Entitled to a *Parisi* Increase?

Plaintiff argues that the Commissioner erred in failing to apply the spirit of the new post-*Parisi* rules to his case because the Commissioner counted Carolyn's payments against the family maximum even during periods when her benefits were suspended because of her work

activity. Dkt. 23 at 10-15. The Commissioner attempts to distinguish *Parisi*, arguing that Plaintiff was not eligible for a *Parisi* increase for two separate reasons: (1) Carolyn's benefits were not merely technical or theoretical, as the spouse's benefits were in *Parisi*[2]; and (2) because *Parisi* increases are not available to dually entitled beneficiaries, such as Plaintiff. Dkt. 27 at 3-4.

The ALJ's decision (AR 458-59) does not reference or rely on the Commissioner's first argument. The ALJ, as noted by Plaintiff (Dkt. 28 at 2), made no findings regarding whether Carolyn's entitlement was technical or theoretical, and thus does not provide a basis for distinguishing *Parisi* on these grounds. Because the ALJ did not make any findings in this regard, the Court cannot rely on this section of the Commissioner's brief as a basis for affirming the ALJ's decision. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (indicating that the Court may only affirm an ALJ's decision on grounds invoked by the agency).

The Court thus turns to consider the Commissioner's second argument, regarding Plaintiff's dual entitlement, which was cited by the ALJ as the reason why the increase that Plaintiff received was erroneous and resulted in an overpayment. *See* AR 459. According to the ALJ, because Plaintiff (unlike the child in *Parisi*) was dually entitled to CDB and DIB, the regulations instruct that he was not eligible for an increase in his benefits based on Carolyn's decrease in benefits. AR 459 (citing 20 C.F.R. §§ 404.401(a), 403(a)(5), 404.407; POMS GN 02603.040, *available at* https://secure.ssa.gov/poms.nsf/lnx/0202603040 (last visited Sep. 29,

---

[2] The Commissioner initially cited the definition of technical entitlement as provided in a non-public POMS provision to argue that Carolyn's entitlement was not merely technical or theoretical, as was the spouse's entitlement in *Parisi*. Dkt. 27 at 3-4. The Commissioner subsequently withdrew citation to that provision after realizing that this provision was in a section of the POMS that is not available to the public. *See* Dkt. 30 at 1-2.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 7

1  2022); POMS GN 02603.045, *available at* https://secure.ssa.gov/poms.nsf/lnx/0202603045 (last
2  visited Sep. 29, 2022)).

3        Plaintiff contends that the goal of the Commissioner's regulations generally and the
4  family maximum rule specifically is to allow the individual to claim the highest benefit
5  available, and that excluding dually entitled beneficiaries from *Parisi* increases contravenes that
6  goal. Dkt. 28 at 4. But "the highest benefit available" is defined by the regulations and the
7  Commissioner's policies and, as the ALJ found, those authorities explain that dual entitlement is
8  a deduction that precludes *Parisi* increases. *See* AR 459 ("Dual entitlement is a deduction in
9  CDB payments, and auxiliary beneficiaries subject to a deduction are not eligible for a
10 readjustment in their [family maximum] benefit rate."); 20 C.F.R. § 404.403(a)(5) ("The effect
11 of this provision is to permit payment of up to the full maximum benefits to other beneficiaries
12 *who are not subject to a deduction or reduction*." (emphasis added)); POMS GN 02603.045,
13 *available at* https://secure.ssa.gov/poms.nsf/lnx/0202603045 (last visited Sep. 29, 2022)
14 (addressing "Deductions Because of Dual Entitlement"). Although Plaintiff is of the opinion that
15 the Commissioner's regulations *should* not, as a policy matter, exclude dually entitled
16 beneficiaries from receiving *Parisi* increases, he has not provided this Court with a persuasive
17 legal basis for finding that the regulations so providing *do* not apply here.

18       Because the ALJ properly applied the regulations to find that Plaintiff was not entitled to
19 a *Parisi* increase due to his status as a dually entitled beneficiary, the ALJ did not err in finding
20 that Plaintiff had been overpaid when the Commissioner erroneously applied a *Parisi* increase
21 from December 2009 through August 2013.

22 //
23 //

### B.     The ALJ Erred in Denying Plaintiff's Request to Waive the Overpayment

The ALJ found that Plaintiff was without fault for the overpayment, but declined to waive the overpayment because repayment would not defeat the purpose of the Act, and repayment would not be against equity or good conscience. AR 460-62. The parties now agree that the ALJ's waiver findings should not be affirmed and agree that on remand, the ALJ should determine whether the ALJ's decision denying waiver is moot in light of the March 2020 waiver notice (AR 471-72) and, if not, whether Plaintiff's remaining overpayment amount should be waived. The Commissioner also acknowledges that there is also uncertainty as to whether Plaintiff was underpaid during 2016-2018 due to efforts to recover the overpayment, and the Commissioner concedes that the ALJ should further develop the record to determine on remand whether amounts previously recovered to repay the overpayment should also be treated as waived and therefore reimbursed to Plaintiff. *See* Dkt. 39 at 8-9.

### C.     The Overpayment Was Not Assessed in Violation of Plaintiff's Due Process Rights

As referenced *supra*, the Commissioner's initial response brief cited a POMS provision that was later revealed to be unavailable to the public, and the Commissioner withdrew reliance on it. Dkt. 30 at 1-2. Plaintiff nonetheless contends that the Commissioner's reliance on a non-public provision deprived him of due process. Dkt. 34 at 14-15. Plaintiff admits that the Commissioner is entitled to maintain portions of the POMS for internal use, not available to the public, but argues that if the agency purports to apply such provisions in adjudicating claims for benefits, the provisions must be disclosed. Dkt. 34 at 14.

The Court shares Plaintiff's concern that the Commissioner's citation to a non-public POMS provision in a brief suggests that this provision informed, to at least some degree, the Commissioner's decision-making process. *See* Dkt. 34 at 11. It seems that when the initial

ORDER REVERSING THE COMMISSIONER'S
DECISION - 9

response brief was written, the Commissioner believed the non-public POMS provision shed at least some light on the overpayment calculation, which undermines the later contention that "both this Court and Plaintiff have access to all Social Security rules and policies that are material to his overpayment calculation." Dkt. 39 at 2. If the Commissioner did not find this non-public POMS provision to be relevant, counsel would not have cited in the brief.

But despite this concern, the Court does not find that Plaintiff's due process rights were directly harmed because, as noted *supra*, the ALJ's decision contains no discussion of Carolyn's technical entitlement, which the non-public POMS section apparently addresses. As stated above, the Court could not affirm the ALJ's overpayment calculation on the basis of the non-public POMS provision, even if was disclosed to the Court and/or the public, because the ALJ herself made no findings regarding the nature of Carolyn's entitlement, and instead calculated the overpayment based solely on Plaintiff's dual entitlement. It thus appears that the non-public POMS is not relevant to the Court's review of the ALJ's decision and the Court has no information to suggest it influenced the adjudication of Plaintiff's claim at issue here. Accordingly, the Court rejects Plaintiff's contention that "the overpayment was assessed in violation of [his] due process rights." Dkt. 34 at 16.

### D.  Counsel for the Commissioner Failed to Act with Reasonable Diligence, Which Resulted in Unnecessary Delay in Resolving This Litigation

As noted *supra*, counsel for the Commissioner initially fully defended this case and requested that the ALJ's decision be affirmed. *See* Dkt. 27. The Court scheduled oral argument on Plaintiff's appeal and entered a minute order setting forth questions for counsel to come prepared to answer. Dkt. 29. Counsel for the Commissioner did not review this minute order, and appeared for the argument unprepared to answer the Court's questions. *See* Dkt. 33. One of the Court's questions pertained to the non-public POMS provision discussed above, which led

counsel to review her brief and discover that this citation had been provided to her by the Appeals Council, but should not have been included in her brief. Dkt. 30.

Another of the Court's questions pertained to a March 2020 waiver notice contained in the administrative record, and counsel for the Commissioner filed a supplemental brief to explain that "[u]pon further review of the record," specifically the March 2020 waiver notice, the Commissioner had come to believe that the case should be remanded for further proceedings to allow the ALJ to reconsider the waiver issue. Dkt. 33 at 2. In a second supplemental brief in response to the Court's questions, counsel for the Commissioner acknowledged that Plaintiff may have been underpaid for benefits between 2016 and 2018 and that this issue requires further development on remand as well. Dkt. 39 at 8-9.

Counsel's conduct —failing to fully review the record and Plaintiff's arguments in the opening brief before filing the initial response brief, failing to review the Court's minute order before oral argument, and failing to review the briefing to ensure that citations contained therein were proper — demonstrates a failure to exercise reasonable diligence that extended this litigation and imposed the additional burden of supplemental briefing to address issues that could and should have been addressed in the first response brief and/or at oral argument months ago. If counsel had fully and thoroughly reviewed the administrative record and Plaintiff's arguments in the opening brief before filing the first response brief, counsel may have been able to agree to a remand on the waiver issue that would have more expeditiously resolved this matter.

Counsel for the Commissioner has apologized to the Court and opposing counsel (Dkt. 33) and described procedures now in place to ensure that some of this conduct will not occur again (*see* Resp. to Order to Show Cause, *Baillie v. Commissioner of Social Security*, Case No.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 11

21-1418-SKV (W.D. Wash. Jun. 10, 2022), ECF No. 24), and the Court finds that no further sanction is necessary to deter future misconduct.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should determine whether the ALJ's decision denying waiver is moot in light of the March 2020 waiver and, if not, whether any remaining overpayment amount (and any amounts previously collected against the overpayment) should be waived and/or reimbursed.

Dated this 30th day of September, 2022.

*S. Kate Vaughan*

S. KATE VAUGHAN
United States Magistrate Judge